**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**EDGAR ERICK EMMANUEL REYES LI GAMBI**,

*Petitioner*,

v.

**WARDEN, DELANEY HALL DETENTION FACILITY**, ***et al.***,

*Respondents*.

No. 26-cv-13105

**OPINION**

**O'HEARN, District Judge.**

Petitioner Edgar Erick Emmanuel Reyes Li Gambi ("Petitioner") is a noncitizen who was recently detained at the Delaney Hall Detention Facility in Newark, New Jersey. Proceeding *pro se*, Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his continued immigration detention and seeking, among other relief, immediate release from custody. (ECF No. 1). The Court granted the Petition and ordered Petitioner released on November 13, 2026. (ECF No. 11). This Opinion supplements the Court's Order.

## I. BACKGROUND

Petitioner is a native of Venezuela and citizen of Italy who entered the United States at Newark Liberty International Airport on or about July 20, 2021, pursuant to the Visa Waiver Program ("VWP"). (ECF No. 6-2 at 2). He was authorized to remain in the United States until October 17, 2021. (*Id.*). On or about November 15, 2021, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal, with United States Citizenship and Immigration Services ("USCIS"). (*Id.*). Immigration and Customs Enforcement ("ICE") records confirm that application remains pending and that Petitioner has no criminal history. (*Id.* at 2–3).

On September 24, 2026, ICE officers encountered Petitioner during a "targeted enforcement operation" in Elizabeth, New Jersey. (*Id*. at 2). On that date, ICE arrested Petitioner, processed him for removal as a "VWP violator," and detained him at Delaney Hall. (ECF No. 6 at 1; Williams Decl., ECF No. 10-1 ¶ 6). That same day, ICE issued and served Petitioner with a VWP Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent") and a Final Administrative Removal Order ("FARO"). (ECF No. 6 at 1–2; *see also* ECF Nos. 6-1, 6-3).

The Notice of Intent alleged that Petitioner had remained in the United States beyond the period authorized by his VWP admission. (ECF No. 6-1). It advised that, if Petitioner wished to contest the factual allegations or his removability, he would receive forty-eight hours from service of the Notice of Intent to respond and could request an extension for good cause. (ECF No. 6-1 at 1). The notice also advised Petitioner of the opportunity to seek asylum, withholding of removal, or protection under the Convention Against Torture. (*Id*.). The certificate of service records service at 6:30 p.m. on September 24, 2026. (*Id*. at 2). Although the notice bears notations that Petitioner refused to sign, the box stating that he wished to request asylum, withholding, or deferral of removal is checked. (*Id*.). The FARO was also served on September 24, 2026, though there is no time stamp on the certificate of service. (ECF No. 6-3).

## II. PROCEDURAL HISTORY

Petitioner commenced this action on October 7, 2026, challenging his continued immigration detention without a bond hearing. (ECF No. 1). On October 20, 2026, the Court directed Respondents either to release Petitioner within twenty-four hours or to submit a response within five calendar days addressing the basis for his continued detention. (ECF No. 4).

Respondents filed their response on October 25, 2026, asserting that Petitioner was subject to mandatory detention under 8 U.S.C. § 1187(c)(2)(E) because he had violated the conditions of

the VWP and ICE intended to effectuate his removal under that program. (ECF No. 6 at 2–4). Respondents expressly acknowledged decisions in this District rejecting § 1187 as an independent source of detention authority but maintained that, absent express contrary precedential authority from the Third Circuit, Petitioner's detention was authorized. (*Id*. at 2–3 (citing *Matter of A-W-*, 25 I. & N. Dec. 45 (B.I.A. 2009)). Respondents further argued that Petitioner was not entitled to a bond hearing under § 1226(a), maintaining that the provision did not apply to VWP participants who had already been found removable and ordered removed. (*Id*. at 3–4).

Respondents acknowledged, however, that Petitioner appeared to have filed an asylum application in November 2021 that remained pending. (*Id*. at 2). They expressly agreed that "such an application would pause ICE's ability to enforce the Final Administrative Removal Order during the pendency of those proceedings." (*Id*.). Nevertheless, Respondents maintained that Petitioner's detention remained mandatory under § 1187, including while he pursued asylum-only proceedings. (*Id*. at 2–4).

Alternatively, Respondents argued that Petitioner was subject to mandatory detention under 8 U.S.C. § 1231(a)(2)(A) because ICE had served him with the FARO on September 24, 2026, which Respondents characterized as an administratively final removal order. (*Id*. at 4–5). On that premise, Respondents asserted that Petitioner remained within the mandatory ninety-day removal period. Respondents also argued that any challenge to his post-removal-order detention was premature under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because Petitioner had been detained for fewer than six months. (*Id*. at 5 & n.1).

On November 2, 2026, Petitioner filed a reply addressing the immigration records attached to Respondents' submission. (ECF No. 8). Petitioner acknowledged the existence of the FARO but emphasized that Respondents' own records identified an unresolved asylum application and

no criminal history. (*Id*. at 1). He further observed that the Notice of Intent and FARO were dated the same day, notwithstanding the Notice of Intent's stated forty-eight-hour response period. (*Id*.). Petitioner requested clarification from Respondents concerning the chronology of issuance and service of the Notice of Intent and the FARO and whether he had waived the response period. (*Id*. at 2–3). Petitioner emphasized that the VWP preserves the opportunity to seek asylum and requested that Respondents provide a supplemental explanation of the status of his November 2021 application, whether ICE had issued a Form I-863 referring him to asylum-only proceedings, the statutory basis for his detention, and whether removal to Italy had been scheduled. (*Id*.). On November 4, 2026, the Court directed Respondents to supplement the record concerning the status of Petitioner's asylum application; the issuance and service of any Form I-863 and the status of asylum-only proceedings; the chronology of issuance and service of the Notice of Intent and FARO; and whether Petitioner's removal to Italy had been scheduled or travel arrangements made. (ECF No. 9).

Respondents submitted a supplemental response on November 11, 2026, supported by a declaration from Maurice Williams, an ICE Supervisory Detention and Deportation Officer ("SDDO"), and a copy of Petitioner's Form I-863. (ECF Nos. 10, 10-1, 10-2). The supplemental submission confirmed that ICE issued the Form I-863 on October 9, 2026, initiating asylum-only proceedings before an Immigration Judge ("IJ"). (Williams Decl., ECF No. 10-1 ¶ 8). The form's certificate of service reflects personal delivery to Petitioner that same day. (ECF No. 10-2 at 2). Petitioner appeared for master calendar hearings on October 22 and October 29, 2026, and another master calendar hearing was scheduled for November 12, 2026. (Williams Decl., ECF No. 10-1 ¶ 8). On or about November 9, 2026, Petitioner also filed a Form I-589 with the IJ. (*Id*.).

Officer Williams expressly acknowledged that Petitioner's pending asylum-only

proceedings were an impediment to removal. (*Id.* ¶ 10). Officer Williams further stated that ICE did not possess Petitioner's passport and would seek a travel document from the Italian Consulate once no legal impediments to removal remained. (*Id.* ¶ 9). Respondents represented that, once Petitioner became eligible for removal, he would travel to Italy on a commercial aircraft. (ECF No. 10 at 2; Williams Decl., ECF No. 10-1 ¶ 11).

The supplemental submission did not, however, explain the chronology of the Notice of Intent and FARO or why ICE issued the FARO on the same day as a notice providing forty-eight hours to respond. Respondents acknowledged the deficiency, stating:

> We understand that the attached declaration from ICE does not fully address this inquiry. We also understand that ICE's failure to provide this information may result in an order from the Court of immediate release, which this Office will promptly provide to ICE.

(ECF No. 10 at 2). The declaration also did not address that chronology. (ECF No. 10-1).

On November 13, 2026, after considering the parties' submissions and the record before it, the Court granted the Petition and directed Petitioner's immediate release. (ECF No. 11).

## III. STANDARD OF REVIEW AND JURISDICTION

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 439 (3d Cir. 2021); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 440 (D.N.J. 2019). Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025).

As Petitioner was detained in New Jersey when he filed his Petition and challenges the legality of that detention on federal constitutional and statutory grounds, this Court has jurisdiction

to consider his claims. For immigration habeas petitions under § 2241, exhaustion is not a statutory requirement, but a prudential one, and "may be excused where it would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Brown v. Warden Canaan USP*, 763 F. App'x 296, 297 (3d Cir. 2019) (quotation marks and citation omitted). Here, Respondents maintain that Petitioner is subject to mandatory detention and is categorically ineligible for a bond hearing. (ECF No. 6 at 2–4). Under these circumstances, the Court excuses any requirement to exhaust administrative remedies on grounds of futility and the potential for irreparable harm from continued detention.

## IV. DISCUSSION

Petitioner challenges the statutory basis for his continued immigration detention. (ECF No. 1). Respondents maintain that his detention is mandatory under 8 U.S.C. § 1187(c)(2)(E) or, alternatively, under 8 U.S.C. § 1231(a)(2)(A). (ECF No. 6 at 2–5). They expressly reject § 1226(a) as an applicable source of detention authority and contend that Petitioner is not entitled to a bond hearing under that provision. (*Id.* at 3–4). Neither asserted statutory ground supports continued detention on the record presented.

### A. Section 1187 Does Not Independently Authorize Petitioner's Detention.

Respondents first argue that Petitioner is subject to mandatory detention under § 1187(c)(2)(E) because he violated the conditions of his admission under the VWP. (ECF No. 6 at 2–4). They acknowledge that courts in this District have rejected that position but maintain that, absent contrary precedential authority from the Third Circuit, the Board of Immigration Appeals' decision in *Matter of A-W-*, 25 I. & N. Dec. 45 (BIA 2009) supports Petitioner's detention without bond, including during asylum-only proceedings. (*Id.*). The Court disagrees.

Courts in this District have repeatedly rejected this argument. *See, e.g.*, *Molina v. Soto*, No. 25-16880, 2025 WL 3281820, at *3 (D.N.J. Nov. 25, 2025) ("The text of § 1187(c)(2)(E) says nothing about DHS's authority to arrest and detain a person who has overstayed under the VWP."); *Gjergj G. v. Edwards*, No. 19-5059, 2019 WL 1254561, at *2 (D.N.J. Mar. 18, 2019) ("[T]he VWP does not have its own detention provision, and the detention of [a noncitizen]. . . must instead arise from one of the other statutory provisions expressly covering aliens subject to detention during their removal proceedings."); *Talv v. Soto*, No. 26-09447, 2026 WL 2607317, at *2 (D.N.J. Sept. 3, 2026) (collecting cases). Respondents' reliance on *Matter of A-W-* does not overcome the absence of detention authority in the statutory text. *Talv*, 2026 WL 2607317, at *2; *but see Matter of A-W-*, 25 I. & N. Dec. at 47–48.

Nor does Petitioner's waiver of certain rights under the VWP establish otherwise. Section 1187(b)(2) generally limits a participant's ability to contest removal, while expressly preserving the opportunity to seek asylum. *See* 8 U.S.C. § 1187(b)(2). Those limitations concern the procedures available to contest removal; they do not independently authorize detention while removal or asylum proceedings remain pending. Accordingly, § 1187 does not provide a lawful basis for Petitioner's continued custody.

### B. Respondents Did Not Establish That the Removal Period Had Begun or That Section 1231 Authorized Petitioner's Detention

Respondents alternatively contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a)(2)(A) because ICE issued and served the FARO on September 24, 2026. (ECF No. 6 at 4–5). Section 1231 generally provides a ninety-day period during which the Government must effectuate removal and requires detention during that period. 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A). The removal period begins on "the date the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B)(i). Respondents maintain that the removal period began on September

24, 2026, and that Petitioner therefore remained within the mandatory ninety-day removal period when they submitted their response. (ECF No. 6 at 4–5).

Yet, even in their initial submission, Respondents acknowledged that Petitioner's November 2021 asylum application appeared to remain pending and agreed that such an application would "pause ICE's ability to enforce the Final Administrative Removal Order during the pendency of those proceedings." (ECF No. 6 at 2). The VWP expressly preserves a participant's ability to seek asylum notwithstanding the waiver of the right to contest removal. 8 U.S.C. § 1187(b)(2). In *Shehu v. Attorney General*, the Third Circuit explained that VWP participants who seek asylum receive "asylum-only" hearings and, if denied relief, may be removed without further process. 482 F.3d 652, 655 (3d Cir. 2007). The Third Circuit held that "a denial of a VWP applicant's petition for asylum, withholding of removal, and relief under the CAT constitutes 'a final order of removal'" because the noncitizen is "entitled to no further process before deportation."[1] *Id.* at 656. Here, Respondents did not establish that Petitioner's asylum-only proceedings had concluded or that his requests for protection had been denied. Indeed, their supplemental submission confirmed that ICE issued a Form I-863 on October 9, 2026, initiating asylum-only proceedings, and that Petitioner filed a Form I-589 with the IJ on or about November 9, 2026. (ECF No. 10-1 ¶ 8). Respondents expressly acknowledged that those pending proceedings were an impediment to removal. (*Id.* ¶ 10). Respondents did not provide a decision resolving those proceedings or otherwise establish a final administrative disposition of Petitioner's asylum claim. Accordingly, the issuance of the September 24, 2026 FARO did not, without more, establish

[1] Although *Shehu* addressed finality for purposes of appellate review rather than detention under § 1231, its reasoning informs the inquiry here because the adjudication of a VWP participant's asylum-related claims was the determination after which no further administrative process preceded removal.

administrative finality for purposes of the detention authority Respondents invoked. On the record presented, Respondents did not establish that Petitioner's removal period had begun or that § 1231(a)(2)(A) authorized his continued detention.[2]

### C. Release Was Warranted Because Respondents Did Not Establish That Either Asserted Statutory Ground Authorized Continued Detention.

The Court recognizes that other courts rejecting detention under § 1187 have concluded that § 1226(a) applies and granted relief in the form of a bond hearing. *See*, *e.g.*, *Gjergj G.*, 2019 WL 1254561, at *3. Here, however, Respondents expressly and repeatedly disclaimed § 1226(a) as the basis for Petitioner's detention. They argued that the provision did not apply to Petitioner and that he was not entitled to a bond hearing under it. (ECF No. 6 at 3–4). Respondents instead defended mandatory detention under § 1187 and § 1231. As explained above, neither asserted ground authorized his continued custody on the record presented.

The Court afforded Respondents multiple opportunities to establish the statutory authority for Petitioner's detention. On October 20, 2026, the Court directed Respondents either to release Petitioner or to explain the basis for his continued detention. (ECF No. 4). Following Respondents' initial submission, the Court directed them to supplement the record concerning Petitioner's pending asylum proceedings and the issuance of the FARO. (ECF No. 9). Their supplemental submission confirmed that Petitioner remained in asylum-only proceedings and that those proceedings constituted an impediment to removal. (ECF Nos. 10, 10-1). Nevertheless,

---

[2] Respondents also argue that Petitioner's challenge is premature because he had been detained for fewer than six months. (ECF No. 6 at 5 n.1). In *Zadvydas v. Davis*, the Supreme Court construed § 1231(a)(6) to authorize detention only for a period reasonably necessary to accomplish removal and recognized six months as a presumptively reasonable period for that purpose. 533 U.S. 678, 701 (2001). That presumption concerns the permissible duration of detention otherwise authorized under § 1231; it does not independently authorize custody or establish that the removal period has begun. Because Respondents did not establish that § 1231 governed Petitioner's detention, the fact that he had been detained for fewer than six months did not render his statutory challenge premature.

Respondents did not establish that the removal period had commenced or identify another applicable statutory basis for his continued detention.

Under these circumstances, the Court will not direct a bond hearing under a statutory provision Respondents expressly maintained did not apply. *See Talv v. Soto*, 2026 WL 2607317, at *5 ("The Court therefore will not order a bond hearing under a detention provision that Respondents have neither invoked nor established as applicable."). Despite multiple opportunities to justify Petitioner's continued custody, Respondents failed to establish that either statutory provision they invoked authorized his detention. The Court declines to construct an alternative detention theory that Respondents themselves expressly rejected.

Because Respondents failed to establish a lawful statutory basis for that detention, the Court granted the Petition and directed Petitioner's release.

## V. CONCLUSION

For the foregoing reasons, the Court granted the Petition for a Writ of Habeas Corpus and directed Petitioner's release by Order dated November 13, 2026.

Christine P. O'Hearn

**CHRISTINE P. O'HEARN**
**United States District Judge**

Dated: November 24, 2026